No. 17,061.

Cox *v.* Starkweather.

(260 P. [2d] 587)

Decided August 3, 1953.

Mr. Harold C. Rudolph, Messrs. Koperlik & Altman, for plaintiff in error.

Mr. L. E. Langdon, Messrs. Seavy & Seavy, for defendant in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

Glenn C. Cox, a resident and elector in the first commissioner district in the County of Pueblo and State of Colorado, to whom we hereinafter refer as contestor, brought an action under the provisions of section 283,

chapter 59, '35 C.S.A., to contest the election of Marion L. Starkweather, hereinafter mentioned as contestee, who had been declared to be the successful candidate for county commissioner in said district.

At the conclusion of all of the evidence, the court dismissed the proceeding and entered judgment in the contestee's favor for costs. Contestor brings the case here by writ of error, seeking a reversal of that judgment.

In the written "Statement of Intention to Contest Election," to which we hereinafter refer as statement, contestor alleged that: He is a qualified elector in said commissioner district; the contestee was ineligible for the office of county commissioner on November 4, 1952, the date of the election, because it is alleged that on that date contestee was an elector and resident in the second commissioner district and under the provisions of section 15, chapter 45, '35 C.S.A., was not qualified as a candidate for commissioner in said first commissioner district.

Contestor sought judgment that contestee be found to be ineligible to be elected to the office of county commissioner in said first commissioner district, and that contestor be declared elected to and entitled to hold said office for the statutory period.

Contestee, for a first answer, alleged that the facts set forth in contestor's statement were wholly insufficient to entitle the contestor-plaintiff to the relief prayed for in said statement, or to any relief whatever; for a second answer he denied all allegations concerning his qualifications as an elector and candidate as alleged in contestor's statement, and affirmatively alleged that on November 4, 1952, and subsequent thereto, he resided in said first commissioner district and was a qualified elector therein; for a third answer he denied that contestor was a resident in said district and alleged that contestor was at all times alleged in said statement an elector in the third commissioner district in the county and state aforesaid; for a fourth answer it is alleged that section 15, chapter 45, '35 C.S.A., is unconstitutional because it

imposes qualifications not found in section 6 of article VII of the Constitution of the State of Colorado. Contestee prayed for a dismissal of the action and for costs.

In contestor's reply he denied all of the allegations contained in contestee's separate answers and defenses.

At the trial, March 12, 1953, and before the taking of any evidence, contestee moved that the action be dismissed for insufficient facts, which motion the court took under advisement and proceeded to hear the evidence. Contestor was called as a witness and testified, inter alia, that he was a qualified elector in said first commissioner district, resided at 1308 Lake Avenue, Pueblo, and then was excused without further examination. Contestee was called "for cross-examination under the statute" and, over objection, the court permitted the examination to proceed. He testified that: On the 13th day of January, 1953, and since that time, he continued to serve as county commissioner from the first commissioner district, and prior to the primary election in 1952 and subsequent to January 21, 1953, his residence was 1432 East 8th Avenue, Pueblo; that early in September, 1952, he changed his residence to 209 East Adams Street, Pueblo, which residence was in the first commissioner district, and his intention in so changing his residence was to qualify, as he did, as an elector in said district and become a candidate for the office which he now holds.

By stipulation, counsel agreed that the board of county commissioners on December 1, 1952, changed the boundaries of the commissioner districts in Pueblo county, and by that change 1432 East 8th Street, 209 Adams Street and 1308 Lake Avenue are all located in the first commissioner district in Pueblo county.

At the conclusion of the evidence the court found: "* * * The testimony of Mr. Starkweather is that he lived at 1432 East 8th Street until the date of the Primary Election in 1952, after which on September 19, 1952, he moved to 209 East Adams in Pueblo, Colorado, which was then in County Commissioner District No. 1;

that he moved there in order to qualify himself for election and that his wife went with him; that he registered to vote in that precinct, and that he had their mail transferred to this address. In the opinion of the Court this constitutes a bona fide change of residence to the correct County Commissioner's District. The testimony further shows that in December of 1952 the then existing Board of County Commissioners, which was composed of Mr. John E. Hill, Mr. Peter Hughes and Mr. John H. Reece, by resolution changed the borders of County Commissioner District No. 1 so that it would include 1432 East 8th Street, after which on January 21, 1953, Mr. Starkweather moved back to 1432 East 8th Street, and the Court Finds That this is now his bona fide residence."

This contest was brought under the provisions of section 283, chapter 59, '35 C.S.A., which provides: "The election of any person, duly declared elected to any county office, except the office of county judge, may be contested by any elector of such county: First—When the contestee is not eligible to the office to which he has been declared elected. * * *'"

Section 10, article XIV of the Constitution of the State of Colorado provides that: "No person shall be eligible to any county office unless he shall be a qualified elector; nor unless he shall have resided in the county one year preceding his election."

Section 12, article VII of our Constitution provides that: "The General Assembly shall, by general law, designate the courts and judges by whom the several classes of election contests, not herein provided for, shall be tried, and regulate the manner of trial, and all matters incident thereto, but no such law shall apply to any contest arising out of an election held before its passage."

Pursuant to constitutional mandate, the General Assembly enacted sections 283-293, inclusive, chapter 59, '35 C.S.A., which prescribe the procedure to be followed in election contests involving county officers, and the sections hereinafter referred to are to be found in said

chapter. Sections 286, 287 and 288 provide the pleadings and time within which the same are to be filed in order that the cause be at issue. Section 289 provides, inter alia, that upon issue being joined, "the county judge shall fix a day for the trial, *to commence not more than twenty nor less than ten days, after the joining of issue,*" and provides that, "*such trial shall take precedence of all other business in said court.*" It also provides that: "* * * An appeal from the judgment and final determination in any cause may be taken to the supreme court, the same as in other causes tried in said court; provided, that such appeal be prayed for, bill of exceptions settled, bond for costs executed and filed, and the record transmitted to the clerk of the supreme court within twenty days from the date of entering such judgment. * * *"

Section 292 provides the form of judgment to be entered. Session Laws of Colorado, 1949, section 1, chapter 155, page 371, provide the necessary qualifications for a voter and elector: He must be: Over the age of twenty-one years; a citizen of the United States; a resident of the state for one year immediately preceding the election; a resident of the county for ninety days, of the city or town thirty days, of the ward or precinct fifteen days.

Section 15, chapter 45, '35 C.S.A., provides that counties shall be divided by the board of county commissioners into as many compact districts as there are county commissioners, the districts to be as nearly equal in population as possible. It further provides that after the organization of the county into districts, one commissioner shall be elected from each of such districts by the voters of the whole county. Further, that if a commissioner removes "without the district in which he resided when elected," the office shall become vacant, in which event the remaining commissioners shall certify the facts to the governor who is authorized to fill the vacancy (section 22, chapter 45, '35 C.S.A.) without any limita-

tion whatever prescribed by statute as to the qualifications of the governor's appointee.

It is admitted by contestor that contestee is in all respects qualified for the office which he now holds except: (1) He was not a qualified elector residing in the first commissioner district at the time of his election; and (2) he was not elected from the first commissioner district. These are the only two points urged by the contestor in the proceeding before us and we shall discuss them in the order of presentation.

1. It is admitted or not seriously disputed that: Contestee desired to become a candidate at the 1952 election for county commissioner in commissioner district No. 1 and in order to accomplish this purpose moved from his long established residence at 1432 East 8th Avenue, which was in commissioner district No. 2, to 209 East Adams Street, which was in commissioner district No. 1, and there registered in the proper precinct on September 19, 1952; contestee continued to reside in commissioner district No. 1 until January 21, 1953, when he returned to his former residence at 1432 East 8th Avenue where he has continued to reside; on or about December 1, 1952, the then board of county commissioners by resolution changed the boundaries of commissioner district No. 1 so that it included 1432 East 8th Avenue as well as the residence of the contestor at 1308 Lake Avenue. Contestee took his oath of office on January 13, 1953, and at all times subsequent thereto was discharging his duties as the county commissioner in commissioner district No. 1.

The question for our determination then is whether contestee was elected from the first commissioner district by the voters of the whole county. As we understand contestor's position in this proceeding, it is that the contestee was not a resident and elector in commissioner district No. 1 at the time of election on November 4, 1953, and, consequently, could not qualify as a commissioner in said district notwithstanding the fact that prior to

January 13, 1953, when contestee's term as county commissioner began, the re-districting of Pueblo county had been accomplished as hereinbefore stated.

It should be remembered that under the provisions of sub-section First, section 283, chapter 59 '35 C.S.A., the ground of contest therein provided is that the "contestee is not eligible to the office to which he has been declared elected." When, under this provision, is the eligibility to be determined—at the date of his election or the date of his qualifying under the statute?

In *Neelley v. Farr*, 61 Colo. 485, 158 Pac. 458, a similar question as to sub-section First, section 283, chapter 59, '35 C.S.A., arose and therein we said:

"It is further contended that the contestor Robert Young, was not a resident of the Commissioner District from which he was elected, at the time of the election, and, that for such reason his contest should fail.

"Conceding for the purposes of this argument only, that if our statute determined such eligibility as of the date of the election, there might be force in this contention, yet the statute does not so determine, but, on the contrary, fixes the question of eligibility as of the time of entering upon the duties of the office. It reads, 'When the contestee is not eligible to the office to which he has been declared elected.' Therefore if the contestor had been declared elected, and had entered upon the duties of the office, in other words, if he was a party to this contest as contestee, his eligibility might be considered as of the time when he entered upon the duties of the office."

In *Neelley v. Farr, supra,* the syllabus, supported by the opinion, reads: "Under Rev. Stat. sec. 1196 the eligibility of a citizen to the office of County Commissioner is to be ascertained as of the time of his entering upon the duties of the office." In this opinion our court relied mainly upon, and quoted at length from, an opinion of the Supreme Court of Iowa in *State v. VanBeek,* 87 Iowa 569, 54 N.W. 525, and cited decisions from sev-

eral other courts in support of the conclusion at which it arrived. We find in 88 A.L.R., page 813, wherein the question here is fully annotated, this statement:

"Another group of courts, constituting the majority, take the view that the word 'eligible' as used in the Constitution and statutes has reference to the necessity not of being elected to the office, but of holding the office, and that therefore, if qualified at the time of the commencement of the term and induction into office, this qualification of the candidate at the time of the election is immaterial."

Among numerous cases cited in support of the statement is *Neelley v. Farr, supra.* A later annotation is to be found at 143 A.L.R., page 1029, fully supporting the above statement from 88 A.L.R. 813. See, 42 Am. Jur., sections 39 and 40, pages 910, et seq. Quoting from section 40, the following: "If the Constitution or statutes do not specify the time when the conditions of eligibility must exist, it is necessary for the courts to have recourse to some other means of determining the matter. The terms employed in declaring the qualifications are to be taken into consideration. And since these are necessarily variant, it is not strange that the courts have reached different conclusions. Some of them, perhaps the majority, take the view that the word 'eligible' as used in Constitutions and statutes has reference to the capacity not of being elected to office, but of holding office, and that, therefore, if qualified at the time of commencement of the term or induction into office, disqualification of the candidate at the time of election or appointment is immaterial. It may suffice, therefore, that a disqualification existing at the time of the election be removed before the term of office begins, or before the candidate qualifies or is inducted into office.

\* \* \*

"As stated above, the language used in the Constitution or statute is of first importance in determining when the qualification to office must exist. Where the provision

there appearing refers to holding of office, rather than the eligibility to office, in defining the qualifications, the courts are inclined to hold that the qualifications are to be determined at the time of the commencement of the term or of the induction into office, rather than at the time of the election."

In 67 C.J.S., section 11, page 126, we find: "The question with reference to the point of time at which the required qualification for office shall exist is a complex judicial question. All legal requirements for holding office are not in every instance to be present at the time of election, and a statute may specify and limit the qualifications which must be present at the time of election. In some jurisdictions, it is held that the term 'eligible' as used in a constitution or statute means capacity to be chosen, and that therefore the qualification must exist at the time of election or appointment, and also at the time when seeking to qualify by taking the oath of office. In other jurisdictions it is held that such word applies to one's fitness or qualifications present at the time of entering on the duties of the office. Where, however, the law merely forbids a disqualified person to hold or enjoy the office, he may hold the office if he removes the disqualification before he is sworn in. It will not suffice to remove the disqualification after assuming the office."

The following, among many other decisions, support the rule as announced in *Neelley v. Farr, supra: People ex rel. Metzger v. Watrous,* 121 Colo. 282, 215 P. (2d) 344; *Slater v. Varney* (West Virginia), 68 S.E. (2d) 757; *Connell v. State, etc.* 196 Ind. 421, 148 N.E. 407; *Widincamp v. Wood,* 167 Ga. 57, 144 S.E. 900; *Commonwealth v. Keiser,* 340 Pa. 59, 16 Atl. (2d) 307; *Enge v. Cass,* 28 N.D. 219, 148 N.W. 607; *Demaree v. Scates,* 50 Kan. 275, 32 Pac. 1123; *State, etc. v. Breckinridge,* 34 Okla. 649, 126 Pac. 806; *Bradfield v. Avery,* 16 Idaho 769, 102 Pac. 687.

Counsel for contestor rely upon and quote from *Sny-*

*der v. Boulware,* 109 Mont. 427, 96 P. (2d) 913, and *Strecker v. Smith,* 66 Idaho 593, 164 P. (2d) 192; but neither of these decisions support contestor for:

In *Snyder v. Boulware, supra,* the constitutional provision there construed was "that no one shall be *elected* as a member of said board (Board of County Commissioners) who has not resided in said district for at least two years next preceding the time when he shall become a candidate for said office"; and in *Strecker v. Smith, supra,* the statutory provision there construed was "2. When the incumbent was not eligible to the office *at the time of election."*

■ We have concluded that under the statutory grounds for contesting an election it is wholly immaterial whether contestee was a qualified elector or voter in commissioner district No. 1 at the time of election where, at the time of his induction into office, his eligibility existed. Even assuming that there is an irreconcilable difference in authorities on the question presented here, the opinion in *Neelley v. Farr, supra,* has charted our course and, perceiving no good reason for departure therefrom, we adhere to it.

■ 2. It is admitted by contestee that his purpose in moving into the first commissioner district was to become a candidate for county commissioner in that district, and for aught that appears in the record, it may have been his intention to continue his residence in that district independent of his election. The evidence upon this question is not clear. However, on all of the evidence before the trial court, it found that contestee's change of residence—as hereinbefore noted—on September 19, 1952, and which was continuous until after the boundaries of commissioner district No. 1 were altered and until January 21, 1953, was a "bona fide change of residence," and we are bound by that finding.

This action was begun by the filing of a "Statement of Intention to Contest Election" on November 14, 1952; the answer thereto was filed on November 24, 1952, and

the replication on December 2, 1952; the cause was tried on March 12, 1953. It came at issue here on June 18, 1953. It would appear from the record that the provisions of section 289, chapter 59, '35 C.S.A., were wholly disregarded and the delay in the determination of this matter inexcusable.

The judgment of the trial court is affirmed.

MR. JUSTICE KNAUSS concurs in the result.