Edward A. ROMERO, Petitioner,

v.

Donald A. SANDOVAL, and Natalie Meyer, as the Colorado Secretary of State, Respondents.

No. 84SA307.

Supreme Court of Colorado,
En Banc.

July 24, 1984.

John S. Castellano, Denver, for petitioner Edward O. Romero.

Remigio Pete Reyes, Denver, Robert Booms, Denver, for respondent Donald A. Sandoval.

Kristie A. Hansen, Asst. Atty. Gen., Denver, for respondent Natalie Meyer.

PER CURIAM.

We granted review under section 1–1–112(2), 1B C.R.S. (1980) of a Denver District Court judgment upholding the secretary of state's refusal to certify the petitioner, Edward O. Romero, as a candidate for nomination on the primary election ballot for the office of state senator for Senate District 31.[1] The district court also declared unconstitutional a portion of section 1–4–501, 1B C.R.S. (1983 Supp.) on the ground it was in conflict with article V, section 4 of the Colorado Constitution. We reverse the judgment of the district court.

Romero seeks the Democratic Party nomination as a candidate for the state senate in Senate District 31. On June 1, 1984, at the Senate District Assembly, he received sufficient delegate votes to be designated by the assembly as a candidate for nomination. The secretary of state, however, declined to place Romero's name on the ballot for the primary election because Romero's voter registration page did not indicate he will have resided in the senate district for one year at the time of the general election. Romero petitioned the district court to require that he be certified as a candidate on the primary election ballot.

Romero claims, and the district court found, that he moved into Senate District 31 on October 27, 1983. On January 3, 1984, Romero appeared at the Denver Election Commission and changed his address on his voter registration page. The voter registration page did not include space for Romero to provide the date on which he moved to his new address; instead, the form used by the Denver Election Commission includes a space to provide the date the elector requests election officials to change his address—here, January 3, 1984. The form is consistent with sections 1–2–203, 1B C.R.S. (1980 & 1983 Supp.), 1–2–204, 1B C.R.S. (1980), and 1–2–215, 1B C.R.S. (1980 & 1983 Supp.), which require a qualified elector making application for registration or indicating a change of residence to swear, subject to criminal penalties for a violation of his oath, that his *present* address is his sole legal place of residence.[2]

---

**1.** The respondents in this action are Donald A. Sandoval, another candidate for the Democratic nomination for the state senate seat for Senate District 31, and Natalie Meyer, the secretary of state.

**2.** Section 1–2–203, 1B C.R.S. (1980 & 1983 Supp.) provides in part:

(1) The county clerk and recorder shall ask each qualified elector making application for registration and said elector shall answer the following:

(a) Whether the elector intends to claim his *present* address as his sole legal place of residence and, in so doing, to abandon claim to any other legal residence;

. . . . .

(d) Whether the elector is aware that a violation of the oath he is about to take is a criminal act under the laws of this state and will subject him to the penalties thereof.

. . . . .

(2) In addition, each qualified elector shall be asked, and said elector shall correctly answer, the following:

. . . . .

(b) The elector's place of residence . . . .

. . . . .

(3)(b) If the elector states that his *present* address is his sole legal residence and that he claims no other place as his legal residence and if he meets the qualifications of section 1–2–101, the county clerk and recorder shall proceed to register the elector. (Emphasis added.)

Section 1–2–204, 1B C.R.S. (1980) provides in part:

(1) The registration sheet to be signed by the elector shall bear the following statement:
"WARNING:
IT IS A CRIME:
To swear or affirm falsely as to your qualifications to register to vote."

(2) Each elector making application for registration shall take the following oath:
"I, . . . ., do solemnly swear (or affirm) that I am a citizen of the United States and that on the date of the next ensuing election I shall have attained the age of eighteen years and shall have resided in the state of Colorado at least thirty-two days and in precinct no. . . . . at least thirty-two days before the election. I further swear (or affirm) that the *present* address I listed herein is my sole legal place of residence and that I claim no other place as my legal residence." (Emphasis added.)

The district court ruled that section 1–4–501, 1B C.R.S. (1983 Supp.) precluded consideration of any evidence other than the voter registration page relating to Romero's residence, and determined that January 3, 1984 was the date Romero's residence began in Senate District 31. Therefore, because the general election for the senate seat will be held November 6, 1984, the court held that Romero did not meet the one-year residency requirement of article V, section 4 of the Colorado Constitution. The district court also concluded that a portion of section 1–4–501 is unconstitutional because it conflicts with article V, section 4.

The issues before us are whether Romero can prove compliance with the residency requirement by means other than the voter registration page and whether section 1–4–501, 1B C.R.S. (1983 Supp.) conflicts with article V, section 4 of the Colorado Constitution. We conclude that Romero has properly established that he has met the residency requirements and that section 1–4–501 is not unconstitutional.

### I.

■ ■ Article V, section 4 of the Colorado Constitution provides in part:

No person shall be a representative or senator who shall not have attained the age of twenty-five years, who shall not be a citizen of the United States, *who shall not for at least twelve months next preceding his election, have resided within the territory included in the limits of the county or district in which he shall be chosen.* (Emphasis added.)

Section 1–4–501, 1B C.R.S. (1983 Supp.) states:

No person except a qualified elector who is at least twenty-one years of age, unless another age is required by law, shall be eligible to hold any office in this state,

nor shall any person be a designee or candidate for office unless he fully meets the qualifications of that office on or before the date the term of that office begins. *The person responsible for certifying the list of designees or candidates for public office shall not so certify the name of any designee or candidate whose voter registration page does not reflect such qualifications.* (Emphasis added.)

The initial dispute in this case concerns the manner by which a candidate may prove compliance with the constitutional requirement that a senator reside in the senate district "for at least twelve months next preceding his election." The district court read the language of section 1–4–501 prohibiting the secretary of state from certifying any designee or candidate for public office "whose voter registration page does not reflect such qualifications" as forbidding the secretary of state to look beyond the voter registration page in determining the beginning date of a candidate's residency. Therefore, the court determined that Romero's residency in Senate District 31 began January 3, 1984, the date he changed his address for registration purposes.

The difficulty with this analysis is that the voter registration page does not include the date a person begins residency; thus, unless an elector changes his address on the voter registration page at least twelve months before the election, he is precluded from establishing that he has been a resident for the requisite time. Were we to read section 1–4–501 to allow proof of residency only by the use of a form tied to the date the address change is entered on the form, the constitutional residency requirement may be lengthened in a manner which infringes substantially on a person's right to hold public office. We must construe

Section 1–2–215, 1B C.R.S. (1980 & 1983 Supp.) provides in part:

(1) Any registered elector who subsequently has moved *from the precinct in which he is registered* to some other precinct in the county or has moved from one residence to another residence in the same precinct may have

his residence changed on the registration books by appearing before the county clerk and recorder at any time during which registration is permitted, making an oath as to his *present* residence, and signing the registration book for such change. (Emphasis added.)

statutes limiting a person's right to hold public office in a way that will least infringe upon that right, "one of the valuable and fundamental rights of citizenship." *Cowan v. City of Aspen*, 181 Colo. 343, 348, 509 P.2d 1269, 1272 (1973).

The only way to avoid infringement by section 1-4-501 upon a person's right to hold public office is to read the provision to allow the secretary of state to look beyond the voter registration page for purposes of determining residency. This interpretation of section 1-4-501 is supported by a similar provision in section 1-4-101(3), 1B C.R.S. (1983 Supp.). Section 1-4-101(3) prohibits the secretary of state from placing on a general election ballot the name of any person not meeting the residency requirements for a particular office. It provides in part: "The information found on the voter registration page shall be admissible as prima facie evidence of compliance with this article." By specifically characterizing the voter registration page as prima facie evidence of compliance with residency requirements, the General Assembly implies that other evidence might also be used to establish residency. Section 1-4-101(3) employs a common-sense rule, and we see no reason not to apply it to a determination of residency for a primary election.[3] A date of registration or change of address filed prior to the inception of the minimum statutory or constitutional residency requirement is prima facie evidence of residency at that time and absent fraud or mistake is conclusive. Conversely, a registration or change of address date filed after the inception of the required residency period is not conclusive as to the date residency began. Because a voter registration page is

designed only to elicit information of present residence at the time the elector registers or appears at the place for voter registration to change his address, the page should be used as no more than prima facie evidence of length of residence. An elector seeking elective office should be allowed to establish the length of his residency within the district by evidence other than the voter registration page if necessary.

The district court relied on *In re Weber*, 186 Colo. 61, 525 P.2d 465 (1974); *Spain v. Fischahs*, 143 Colo. 464, 354 P.2d 502 (1960); and *Anderson v. Kilmer*, 134 Colo. 270, 302 P.2d 185 (1956), in holding that the secretary of state could not look beyond the voter registration page for evidence of residency. These cases hold that voter registration information is all that may be considered when determining a person's date of affiliation with a political party, and they were correctly decided. Since the date of a person's affiliation with a political party is difficult to determine, it is appropriate to require that affiliation be recorded on public records. However, the date a person moves from one district to another may be established by extrinsic facts.

In this case the district court found from extrinsic evidence that Romero moved into Senate District 31 on October 27, 1983. The general election for this senate seat will be held November 6, 1984. We conclude, therefore, that Romero has met the constitutional requirement of twelve months pre-election residency and order that the secretary of state certify his designation as a candidate for nomination on the primary election ballot for a state senate seat from Senate District 31.

3. We are aware that section 1-4-501 formerly provided that the "person responsible for certifying the list of designees or candidates for public office shall not so certify the name of any designee or candidate who is unable to provide proof that he can fully meet the qualifications of office if elected." In 1983, the General Assembly amended the statute to require that the "person responsible for certifying the list of designees or candidates for public office shall not so certify the name of any designee or candidate whose voter registration page does not reflect such qualifications." Ch. 51, sec. 14, § 1-4-501, 1983 Colo.Sess.Laws 352. Unfortunately, the amendment directing the secretary of state to the voter registration page to determine length of residency ignores the fact that the voter registration page does not include information on the length of residency.

## II.

The district court also held that a portion of section 1–4–501 conflicts with article V, section 4 of the Colorado Constitution and, therefore, is unconstitutional. Article V, section 4 requires twelve months residency prior to the election. Section 1–4–501 states in part: "No person ... shall be ... a designee or candidate for office unless he fully meets the qualifications of that office on or before the date the term of that office begins." The district court concluded that the statute's requirement that qualifications be met "on or before" the date the term begins conflicts with the constitutional requirement that for the office of state representative or senator a person must meet the residency requirement prior to the election. We disagree.

A statute must be construed in a manner consistent with constitutional requirements whenever reasonable and practical. § 2–4–201, 1B C.R.S. (1980); *People v. Roybal*, 618 P.2d 1121 (Colo.1980). Section 1–4–501 is a general statute that applies to candidates for all public offices. It merely states that qualifications must be met "on or before" the date the term of office begins; it does not purport to change constitutional requirements. By meeting the constitutional requirement of residency twelve months prior to an election, a candidate automatically satisfies the requirement of section 1–4–501 that the qualifications be met "on or before" the date the term begins.[4] Furthermore, the constitutional provision and section 1–4–501 do not conflict if section 1–4–501 is construed, as we have construed it, to allow an elector seeking public office to use the voter registration page as prima facie evidence of meeting the constitutional residency requirement, and to use extrinsic evidence to establish residency if necessary.

Judgment reversed.

ROVIRA, J., does not participate.

4. We note that the secretary of state has interpreted the provision of section 1–4–501 at issue here as a general requirement not applicable to candidates for offices for which specific residency requirements are provided by the constitution or other statutes.