Eileen M. THOURNIR,
Plaintiff–Appellant,

v.

Natalie MEYER, Secretary of State for
the State of Colorado; and State of
Colorado, Defendants–Appellees.

No. 89–1082.

United States Court of Appeals,
Tenth Circuit.

July 23, 1990.

David H. Miller (Tamara K. Vincelette
and Linda C. Michow of Holland & Hart,
Denver, Colo., with him on the briefs),
American Civil Liberties Union Foundation
of Colo., Denver, Colo., for plaintiff-appel-
lant.

Maurice G. Knaizer, Deputy Atty. Gen.
(Duane Woodard, Atty. Gen., Charles B.
Howe, Deputy Atty. Gen., and Richard H.
Forman, Sol. Gen., with him on the briefs),
Denver, Colo., for defendants-appellees.

Before MOORE and McWILLIAMS,*
Circuit Judges, and BRATTON, District
Judge.**

* Judge McWilliams attended oral argument, but
did not participate in the decision.

** The Honorable Howard C. Bratton, Senior Dis-
trict Judge for the United States District Court
of New Mexico, sitting by designation.

JOHN P. MOORE, Circuit Judge.

This case challenges the constitutionality of Colorado Revised Statutes § 1–4–801(1)(i) (1980) which provides that a person seeking elective office as an unaffiliated candidate must be registered in Colorado as an unaffiliated voter for at least one year before filing a nomination petition. On cross-motions for summary judgment, the district court concluded the statute imposed no constitutionally impermissible burden and granted summary judgment in favor of the defendant, Secretary of State Natalie Meyer. *Thournir v. Meyer*, 708 F.Supp. 1183 (D.Colo.1989). Ms. Thournir has appealed contending the statute violates First Amendment freedoms as well as the due process and equal protection clauses of the Fourteenth Amendment. We affirm.[1]

The facts are undisputed. Ms. Thournir moved to Colorado from California in February 1981, but she did not register as an unaffiliated voter until July 14, 1982. On August 19, 1982, she filed nominating petitions with the State to run as an unaffiliated candidate for Congress. Despite the designation of her candidacy, Ms. Thournir had been a member of the Socialist Workers Party (SWP) in California since 1976, but Colorado election laws in existence at the time would permit voters to register only as a "Democrat," a "Republican," or as "Unaffiliated."[2] After litigation initiated by the Secretary in state court resulted in Ms. Thournir's removal from the ballot because of her failure to meet the qualifications of Colo.Rev.Stat. § 1–4–801(1)(i), Ms. Thournir filed this action under 42 U.S.C. § 1983 challenging the statute.[3] Subsequent actions in state court involving

other candidates and changes in the Secretary's rules have significantly moderated the effect of the statute on independent candidates in ways not germane here; therefore, we approach this case solely on the basis of how the statute affects a person in the precise status of Ms. Thournir at the time she sought to run as an unaffiliated candidate.

■ We review *de novo* a district court's decision on a motion for summary judgment, *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). In doing so, we must review the record in the light most favorable to the nonmoving party. *R–G Denver, Ltd. v. First City Holdings*, 789 F.2d 1469, 1471 (10th Cir. 1986).

The principal question presented for our consideration is whether Colo.Rev.Stat. § 1–4–801(1)(i) places a constitutionally impermissible burden upon unaffiliated candidates which effectively excludes them from the election process. *See Anderson v. Celebrezze*, 460 U.S. 780, 793, 103 S.Ct. 1564, 1572, 75 L.Ed.2d 547 (1983). In reviewing this issue, "we must first consider the character and magnitude of the asserted injury" to the plaintiff's constitutional right and then "identify and evaluate the precise interest" advocated by the state to justify any burden state law places on the plaintiff's right. *Rainbow Coalition v. Oklahoma State Election Bd.*, 844 F.2d 740, 743 (10th Cir.1988) (quoting *Anderson*, 460 U.S. at 789, 103 S.Ct. at 1570).[4] "Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional." *Anderson*, 460 U.S. at 789, 103 S.Ct. at 1570.

---

1. Because the election in which Ms. Thournir sought to run has been held, the Secretary has moved to dismiss this appeal as moot. We disagree. *See Barnard v. Chamberlain*, 897 F.2d 1059, 1062 n. 3 (10th Cir.1990).

2. This limitation on candidacy has not been raised directly in this proceeding.

3. Ms. Thournir did not regain a place on the ballot and did not run in the 1982 election. The

ultimate disposition has been delayed because of prior appeals from, and remands to, the district court.

4. Ms. Thournir advocates the "strict scrutiny" review we refused to follow in *Rainbow Coalition*, 844 F.2d at 742. Having once rejected that doctrine, we are not free to apply it here.

The right asserted here by Ms. Thournir appears twofold. She advocates her individual right to seek office, but she also asserts the associational rights of the members of the Socialist Workers Party to advocate their political beliefs through the aegis of her candidacy. We shall consider the issues separately.

## ASSOCIATIONAL RIGHTS

■ Colorado did not recognize party affiliation other than Democrat and Republican in 1982, *Thournir v. Meyer,* 708 F.Supp. at 1185; therefore, Ms. Thournir's membership in the SWP and the collective interests of those adhering to membership in that party are not legally distinguishable from the interests of the broad spectrum of persons claiming no affiliation with the established major parties. Under the Colorado statutory scheme, no attempt was made to distinguish one group of unaffiliated voters from another; therefore, we must assume the generic classification of "unaffiliated voter" was protected by the same umbrella of rights and interests.[5]

Moreover, this generic sameness resulted in the elimination or denial of the existence of any political party other than Democrat and Republican. Thus, when Ms. Thournir submitted herself in candidacy for Congress, she could not carry the banner of the Socialist Workers Party. Ms. Thournir and her trial counsel recognized this peculiarity of then existent Colorado law in district court proceedings. In his recitation of undisputed facts during an early hearing, counsel stated: "[Ms. Thournir] registered to vote in early July 1982, and she registered as unaffiliated as the Socialist Workers Party is not a recognized party within the State of Colorado." (R. Vol. I, doc. 4, at 26). In her affidavit for summary judgment, Ms. Thournir stated: "Affiant registered in the City and County of Denver as an unaffiliated voter. (While Affiant was in fact a member of the SWP, Affiant was not allowed to register as such because of other then-existing Colorado Election Code provisions prohibiting registration as anything except 'Democrat', 'Republican', or 'Unaffiliated')." *Id.,* at 29–30. Indeed, as a purely factual matter, there is nothing in the record to suggest Ms. Thournir actually sought or was to appear on the ballot as a candidate of the Socialist Workers Party, notwithstanding her own ideology and claim of party membership.

We therefore cannot accept Ms. Thournir's thesis that her putative candidacy represented a distinct political body of common interest which was denied an opportunity to voice its views because she was refused a place on the ballot. Instead, we must view Ms. Thournir's case as we would that of a person who maintained no identifiable political affiliation and who simply sought an opportunity to stand for public office.

Indeed, when questioned during oral argument, her counsel admitted the community of interest represented by her candidacy had to have been *all* of Colorado's unaffiliated voters. Thus, despite the political views and the interests she shared with people who claimed membership in the SWP, those views and interests were substantially diluted within the whole of the diverse views and interests of persons claiming no affiliation with the major political parties. Indeed, the peculiar Colorado law created the unique situation in which "the rights of voters and the rights of candidates do [ ] lend themselves to neat separation."[6] Therefore, we must regard Ms. Thournir's membership in the Socialist Workers Party essentially irrelevant to the question before us.[7]

5. Current Colorado law is much different. An independent candidate can run under any affiliation other than the name of an official political party. Colo.Rev.Stat. § 1–4–801(1)(a) (Supp. 1989).

6. *Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972).

7. Ms. Thournir's attack here is dissimilar from the focus of *Baer v. Meyer,* 728 F.2d 471 (10th Cir.1984), in which persons associated with political groups other than the Democrat and Republican parties successfully challenged Colorado's failure to grant those groups the same ballot process protections as the major parties. We find no support in *Baer* for Ms. Thournir's case as she has framed it.

So focused, we find ourselves unable to deal with the broad issues of associational rights that form the nucleus of Ms. Thournir's case. Because of the strictures of then current state law and the fact that Ms. Thournir was truly unaffiliated in the eyes of that law, we believe there is no legal substance to her claim of denial of associational rights. Indeed, we conclude that claim is not justiciable. Given her inability to be the candidate of a particular voter group, we simply cannot assay the associational rights Ms. Thournir attempts to vindicate. While we in no way denigrate the significance of those rights, we find no vehicle in this case that would allow us to reach them.

## MS. THOURNIR'S INDIVIDUAL RIGHT

█ Given our previous analysis, we must now examine the durational registration requirement only as it affects all individual unaffiliated candidates in Colorado regardless of their political ideology. This circumscription of the right involved diminishes its magnitude in the balancing test required by *Rainbow Coalition.*

While the right to freely exchange political thought has resulted in a severe limitation of a state's power to affect associational and voting rights of political parties, *Eu v. San Francisco Cty. Democratic Cent. Comm.,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989); *Tashjian v. Republican Party,* 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986); *Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979), the effects of a state's durational limitations on the rights of individual candidates are less clear.

In *Bullock v. Carter,* 405 U.S. 134, 142–43, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972), the Court stated it had not "attached such [a] fundamental status to candidacy as to invoke a rigorous standard of review." The *Bullock* Court had before it a Texas statute that required a substantial filing fee as a precondition to qualifying a candi-

date for placement on the ballot. The Court defined the fee as a barrier to the candidate's ballot access but not to a citizen's right to vote. The Court stated, "In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters." *Id.* at 143, 92 S.Ct. at 856.

So directed, it becomes difficult for us to see how Ms. Thournir's removal from the ballot had a significant impact in 1982 upon the unaffiliated voters of Colorado. *See City of Akron v. Bell,* 660 F.2d 166, 169 (6th Cir.1981). Ms. Thournir's individual candidacy, without a legally recognizable constituency, can be accorded no special status under *Bullock.* Indeed, had the converse been true, had she been able to legally claim a constituency, the associational rights of those voters would be germane to this case because denial of her candidacy would have impacted directly upon the voters comprising that constituency. Yet, as we have pointed out, the only issue relates to Ms. Thournir and her individual right to run for office. In that context, we are unpersuaded that the twelve-month registration requirement, standing alone, presents an undue burden on the rights of a putative candidate.

Here, the Secretary has established the purpose for Colorado's durational requirement is to protect the integrity of the party system and to prohibit "frivolous" candidacies. Reasonable restrictions on candidacy to accomplish these ends are sufficient to uphold the statute. *Storer v. Brown,* 415 U.S. 724, 733, 94 S.Ct. 1274, 1280, 39 L.Ed.2d 714 (1974); *Rosario v. Rockefeller,* 410 U.S. 752, 761, 93 S.Ct. 1245, 1251, 36 L.Ed.2d 1 (1973); *Lubin v. Panish,* 415 U.S. 709, 715, 94 S.Ct. 1315, 1319, 39 L.Ed.2d 702 (1974); *Andress v. Reed,* 880 F.2d 239, 242 (9th Cir.1989). We believe the one-year requirement is not an unreasonable restriction. *Cf. City of Akron,* 660 F.2d at 169 (one-year durational residency requirement does not impair a candidate's First Amendment rights).[8]

---

**8.** Ms. Thournir argues the State has no interest in a particular person's choice of party affiliation, and that is correct. We do not, however,

believe that the State is under any burden to pass a "less restrictive means" of accomplishing

### DUE PROCESS CLAIMS

 Ms. Thournir challenges Colo.Rev. Stat. § 1–4–801(1)(i) as a *de facto* residency requirement prohibited by *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). She maintains the statute evokes the same punitive consequence as that proscribed by *Dunn*. We disagree. Those election laws impacting upon the travel freedoms which have been invalidated by *Dunn* are not analogous to the statutes imposing burdens on candidacy. Candidacy itself is not a fundamental right which is comparable to the right to vote; therefore, burdens inflicted upon candidates are not to be measured by the same yardstick applied to burdens affecting voters. *City of Akron*, 660 F.2d at 169.

Ms. Thournir also argues the statute is a "broadly worded trap" because "it fails to discriminate between those who have, and those who have not, been affiliated with their party" for one year. As we have already pointed out, under the 1980 election laws from which this case arose, "party" affiliation other than that of Democrat or Republican was irrelevant to an "unaffiliated" candidate. Consequently, we can find no basis for Ms. Thournir's argument, as the statute would not have to provide a means to distinguish the duration of membership in a nonrecognized political group.

Ms. Thournir contends the statute creates an impermissible, conclusive presumption that she was not a member of the SWP for the necessary one year. We think that argument falls, once again, upon the statute's failure to give recognition to the SWP. The irrelevance of her party membership as an unaffiliated candidate moots any suggestion of an issue based upon impermissible conclusions within the statute.

Ms. Thournir finally argues the State of Colorado disenfranchised her and her supporters when, by regulation of the Secretary, she was not permitted to run as a write-in candidate. The Secretary has pointed out, and Ms. Thournir has admit-

its legitimate purpose as that purpose applies to

ted, this regulation was repealed in 1987; hence this issue is moot.

Having found no factual substance to, or support for, the central issues of this appeal, and having concluded the district court correctly analyzed the remaining issues, we AFFIRM the judgment of the district court.

an individual candidate's right to seek office.